F I L E D
Clerk
District Court

JUL 2 2 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  **William M. Fitzgerald, Esq.**
   **LAW OFFICE OF WILLIAM M. FITZGERALD**
2  1st Floor, Macaranas Building
   P.O. Box 909
3  Saipan, MP 96950
   Telephone (670) 234-7241
4  Facsimile (670) 234-7530

5

6  **Bruce Berline, Esq.**
   **Law Office of Bruce Berline**
   1st Floor, Macaranas Building
7  P.O. Box 5682 CHRB
   Garapan, Saipan, MP 96950
8  Telephone:  (670) 233-3663
   Facsimile: (670) 233-5262

9

10  Attorneys for Plaintiffs

11

      IN THE UNITED STATES DISTRICT COURT
12
                  FOR THE
13

14  COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

15
   KENNETH COUTURE,                    )   CV NO. 05 - 0024
16                                      )
              Plaintiff,                )
17                                      )   COMPLAINT
              v.                        )   DEMAND FOR JURY TRIAL
18                                      )
   AMERICAN   OVERSEAS   MARINE)
19  CORPORATION and GENERAL DYNAMICS)
   CORPORATION,                         )
20                                      )
              Defendants.               )
21  _____)

22
            **ACTION UNDER SPECIAL RULE FOR SEAMEN**
23      **TO SUE WITHOUT SECURITY AND PREPAYMENT**
                **OF FEES, 28 U.S.C. § 1916**
24
        Plaintiff Kenneth Couture, by and through his counsel of record, William Fitzgerald and Bruce
25
   Berline, allege as follows:
26

27

28

ORIGINAL

## PARTIES

1.    Plaintiff Kenneth Couture ("Plaintiff Couture") is a citizen and domiciliary of the Commonwealth of the Northern Mariana Islands ("CNMI") and presently resides on Saipan.

2.    Plaintiff Couture is a seaman pursuing his remedies under Section 33 of the Merchant's Seaman's Act of June 5, 1920, and all amendments thereto, and all other applicable maritime and tort law in the premises.

3.    Defendant AMERICAN OVERSEAS MARINE CORPORATION ("AMSEA") is a corporation organized pursuant to the laws of Delaware which at all times relevant to this complaint transacted business within the CNMI.  AMSEA is a wholly owned subsidiary of General Dynamics Corporation.

4.    Defendant GENERAL DYNAMICS ("GENDYN") is a corporation organized pursuant to the laws of Delaware, which at all times relevant to this complaint, transacted business within the CNMI.

5.    Defendants JOHN DOES 1-25 and ROE ENTITIES 1-25 are sued herein under fictitious names for the reason that, despite diligent and good faith efforts to obtain information, their true names, identities, and capacities, are presently unknown to Plaintiffs, except that they include, but are not limited to:

(a) vessel owners, manufacturers, servicers, service facilities, designers, operators, lessees or charterers, and/or the agents, servants, employees, employers, representatives, co-venturers, associates, vendors, suppliers, manufacturers, lessors, subcontractors or contractors of the named Defendants;

## JURISDICTION/JURY TRIAL

6.    This court has personal jurisdiction over Plaintiff.

7.    This court has personal jurisdiction over Defendants AMSEA and GENDYN.

8.    This court has *in rem* jurisdiction over the Defendant M/V "1st Lt. Jack Lummus", simultaneously with all engines, tackle, freight, equipment, and other stored items and appurtenances.

9.    This court has original subject matter jurisdiction of Plaintiff Couture's admiralty and maritime claims pursuant to the *Jones Act*, 46 U.S.C. §688, and general maritime law, and pursuant to 28 U.S.C. §1333, 28 U.S.C. §1337 and 28 U.S.C. §1331, saving to Plaintiff all other remedies to which they are otherwise entitled.

10.    The factual and jurisdictional grounds upon which Plaintiff Couture's claims are premised entitle Plaintiffs to a trial by a CNMI jury except any coming within the meaning of Rule 9(h) of the *Federal Rules of Civil Procedure.*

## FACTS

11.    This matter contains admiralty claims along with general maritime claims. Additionally, this action entitles Plaintiff to bring a libel *in rem* against the vessel M/V "1ˢᵗ Lt. Jack Lummus" for the assertion of maritime liens which arise from claimed injuries.

12.    Plaintiff Couture, at all relevant times described in this Complaint, was hired and employed by Defendant AMSEA and/or Defendant GENDYN, as a seaman assigned to serve as a member of the crew aboard the vessel M/V "1ˢᵗ Lt. Jack Lummus.".

13.    AMSEA and/or GENDYN, at all times material to Plaintiff Couture's allegations, including but not limited to March 25,2004, was and is engaged in business as a vessel owner, and/or operator of vessels, and was the owner, lessee, lessor, charterer, subcharterer, operator, and/or owner *pro hac vice* of the M/V "1ˢᵗ Lt. Jack Lummus".

14.    The M/V "1ˢᵗ Lt. Jack Lummus" (hereinafter the "Vessel") is, and was at all times relevant to this complaint, a United States flagged vessel used for the transport of people, equipment and/or goods by water.  The Vessel is presently located in this district.

15.    Plaintiff Couture works as a Qualified Member of the Engine Department on the Vessel providing critical maintenance work on the Vessel's engines along with a variety of the Vessel's other systems and devices.

16.    Plaintiff Couture's duties on the Vessel directly contributed to the function of the Vessel.

17.    Plaintiff Couture was acting within the course and scope of his employment, performing his duties on board the Vessel, which was in navigation, and upon navigable waters when Plaintiff Couture was injured and suffered damages.

18.    On or about March 25, 2004, Plaintiff Couture's duties on the Vessel required the need for a six (6) foot section of approximately one inch (1") diameter black iron pipe for a project which involved a modification of a particular communication system on the Vessel.

19.    Plaintiff Couture's supervisor ordered Plaintiff Couture to go and cut a six (6) foot section of the required black iron pipe.

3

20.    The black iron pipe which Plaintiff Couture was ordered to cut is kept on the Vessel in twenty (20) foot lengths.

21.    These twenty (20) foot lengths of black iron pipe are stored, unsecured in an unsafe manner, on the Vessel in simple racks attached to one of the Vessel's bulkheads. The racks do not incorporate any means of securing the pipe in the racks and the pipes stacked in an unsafe fashion in the racks so as to create a defective and unseaworthy condition.

22.    As ordered, Plaintiff Couture took one twenty foot length of pipe off the rack.

23.    As Plaintiff Couture laid the pipe on the Vessel's deck, another twenty foot length of pipe fell from the rack onto the deck smashing Plaintiff Couture's hand.

24.    As a result of the above described events, Plaintiff Couture suffered severe injury to his right hand, including, without limitation, a shattered bone in the little finger, a deep laceration, severe swelling and various contusions

25.    On that same day, after the injury, Plaintiff Couture was examined by the Vessel's medic. The Vessel's medic failed to take any x-rays of the finger and failed to determine if the little finger was indeed broken, electing instead merely to stitch up the lacerated little finger with seven stitches and sending Plaintiff Couture back to work.

26.    After the initial injury, Plaintiff Couture's finger remained severely swollen even after the stitches were removed.

27.    As a result of the swelling, Plaintiff Couture requested to see a doctor. Plaintiff Couture initially saw a doctor at the Guam hospital. That doctor took x-rays of the finger and was immediately alarmed about the condition of Plaintiff's finger and referred him immediately to Dr. Jerome T. Landstrom, MD, FACS, a surgeon specializing in hand injuries.

28.    On or about April 21, 2004, Dr. Landstrom examined Plaintiff Couture and again x-rayed his finger and discovered that the little finger was severely broken.

29.    Dr. Landstrom told Plaintiff Couture that the finger had to be fixed immediately and scheduled Plaintiff Couture for surgery the next day.

30.    On or about April 22, 2004, Plaintiff Couture went into surgery wherein Plaintiff's little finger was re-broken and mended with a metal pin.

31.    After about two months of rest, Plaintiff Couture returned to work. Plaintiff again broke the same little finger necessitating Plaintiff's return to Dr. Landstrom for more surgery.

4

32.    In order to fix Plaintiff's finger, Dr. Landstrom used a bone graft from Plaintiff's wrist, a titanium plate and seven screws.

33.    Plaintiff Couture's injuries required physical therapy for about two months.

34.    Despite such physical therapy, Plaintiff's little finger has been rendered essentially useless from the accident.

35.    As a result of Plaintiff Couture's injuries, he has sustained and will continue to sustain permanent and painful injuries of body and mind, has incurred and will continue to incur medical, hospital and related expenses, and has lost and may continue to lose wages.

**COUNT 1:  JONES ACT NEGLIGENCE**

36.    Plaintiff repeats and realleges, and incorporate herein by reference, each and every allegation contained in the preceding paragraphs.

37.    Plaintiff's injuries were caused by the negligence of defendants AMSEA or GENDYN, its agents servants, officers and/or employees.

38.    Defendants AMSEA and/or GENDYN owed certain duties of care to Plaintiff Couture, such duties included, without limitation, the duty to provide Plaintiffs with a reasonably safe place in which to work, the duty to provide reasonably safe conditions in which to work, and the duty to provide reasonably safe equipment with which to work.

39.    Defendants AMSEA and /or GENDYN owed a further duty of care to Plaintiff, to provide Plaintiff with reasonably adequate and competent medical personnel on board the Vessel.

40.    Defendants AMSEA and /or GENDYN owed a further duty of care to Plaintiff to inspect the equipment and to take reasonable precautions to protect Plaintiff from possible danger.

41.    Defendants AMSEA and /or GENDYN owed a further duty of care to Plaintiff to instruct its employees, including Plaintiff to perform tasks either with a number of employees or a procedure or method with which it knew or in the exercise of reasonable care should have known, would result in injuries.

42.    Defendants AMSEA and/or GENDYN breached such above duties owed to Plaintiff.

43.    Furthermore, Defendants AMSEA and/or GENDYN its agents servants officers and/or employees failed to duly warn and/or notify Plaintiff of dangerous condition of and aboard the Vessel.

44.    Defendants AMSEAC and /or GENDYN its agents servants officers and/or employees failed to use reasonable judgment in hiring and employing inspectors, surveyors, and other people and/or

5

entities who inspected, tested, looked at, reported on, or was responsible in any other way for the safety and seaworthiness of the Vessel.

45.    Moreover, the rack and the black iron pipes, as stored in the racks, where within the exclusive control of Defendants AMSEA and /or GENDYN, including their agents, servants, officer and or other employees and the events leading up to and causing Plaintiff Couture's injuries are such as in the ordinary course of things would not occur if the one having exclusive control uses proper care, and thus the doctrine of *Res Ipsa Loquitur* is applicable and should be applied in this case.

46.    The negligence of Defendants AMSEA and /or GENDYN , their agents, servants, officers and/or employees, resulted in, or at the very least, played the slightest part in bringing about, Plaintiff Couture's injuries, including his physical, mental, economic and non-economic damages.

### COUNT II: UNSEAWORTHINESS

47.    Plaintiff repeats and realleges, and incorporates herein by reference, each and every allegation contained in the preceding paragraphs.

48.    The injuries and damages which were sustained by Plaintiff was also caused by the Vessel's unseaworthy condition as the Vessel or part of the Vessel, its gear, equipment and/or crew, including without limitation, its medical personnel, were not reasonably fit for their intended purposes.

49.    The Vessel's unseaworthy condition brought about or actually caused Plaintiff Couture's injuries and Defendants, therefore, are liable for those injuries and damages.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

A.    Issuance of a judgment, jointly and severally against Defendants AMSEA and GENDYN, as follows:

1.    General Damages and Special Damages in an amount to be determined at trial;

2.    Costs of suit; and,

3.    Such other and further relief as is deemed lawful, just, or equitable under the circumstances;

Dated:  Saipan, CNMI, July _11th_, 2005.

Bruce Berline
William Fitzgerald
P.O. Box 5682 CHRB
Saipan, MP 96950
Attorneys for Plaintiff Kenneth Couture

6