**William M. Fitzgerald, Esq.**
LAW OFFICES OF WILLIAM M. FITZGERALD
1st Fl. Macaranas Bldg., Garapan Beach Road
P.O. Box 500909
Saipan, MP 96950
Telephone:   (670) 234-7241
Fax:         (670) 234-7530

**Bruce Berline, Esq.**
LAW OFFICE OF BRUCE BERLINE
1st Fl. Macaranas Bldg., Garapan Beach Road
P.O. Box 5682 CHRB
Saipan, MP 96950
Telephone:   (670) 233-3663
Fax:         (670) 233-5262

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| KENNETH COUTURE,<br><br>                    Plaintiff,<br><br>    v.<br><br>AMERICAN OVERSEAS MARINE CORPORATION and GENERAL DYNAMICS CORPORATION,<br><br>                    Defendants. | CIVIL ACTION NO. CV05-0024<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  March 15, 2007<br>Time:  10:00 a.m.<br>Judge: Alex R. Munson |

## INTRODUCTION

Defendants have moved for summary judgment, seeking dismissal of plaintiff's action on the grounds that the Public Vessels Act ("PVA") and the Suits In Admiralty Act ("SAA") prohibit

1

plaintiff from suing the vessel's owner and his employer and limit his remedy to an action against the United States.

Defendants' motion is a shocking and unprincipled attempt to intimidate plaintiff into a settlement. Shocking that, after two years of litigation in which the defendants admitted jurisdiction, supplied the name of the insurance company responsible for paying plaintiff's claim, obtained a four month continuance of the trial based on the necessity of taking depositions on the east coast of the United States, depositions in which the defendants' employees testified that defendants have a claims department and claims manager who is specifically charged with handling personal injury claims of defendants' employees on twenty-seven (27) different ships owned by defendants, the defendants now tell the court that it is not the responsible party, that the United States is, and that plaintiff's claim should be dismissed even though the statute of limitations against the United States has run.

Equally shocking, as the motion itself, is the failure of the defendants in any of the moving papers, to offer a single word of explanation for its failure to raise this issue until three months after the original trial date. Why was so much time and money of the parties, not to mention the court, expended litigating against the defendants if the United States is the only party that can be sued?

Are giant defense contractors with a long history of chartering vessels to the United States, insured under a P&I policy and advised by a law firm expert in admiralty law, so ignorant of the law that they were not aware of the PVA and the SAA or so devious and dissembling that they led plaintiff and the court to believe that they, in fact, were the proper parties, laying in the weeds until after the statute of limitations against the United States had passed.

In fact, neither is the case, the defendants are well aware of the law and well aware that under the law, they, and not the United States, are the parties responsible for personal injuries to

2

its seamen employees aboard ships that they own and time charter to the government. The motion is simply an attempt to obtain a better position for settlement by intimidating the plaintiff with the threat that his claim could be dismissed.

As the court will see, the motion is totally bogus and should be summarily denied with sanctions assessed.

## SUMMARY OF ARGUMENT

The law is clear that, to be subject to the PVA, the vessel must either be owned by the United States or leased to it, pursuant to a bareboat or demise charter.

The written charter agreement is entitled, "Time Charter" and at Article 35, states specifically that it is not a "demise". The law of the Ninth Circuit is that normally time charterers are not responsible for personal injuries to crewmen on vessels that they charter, and, therefore, the SAA is not applicable. Defendants have failed to cite a single case in which a court has granted the relief they are requesting on similar facts.

Despite defendants' astonishing request that the court dismiss this case, pursuant to PVA and the SAA three months after the original trial date, it has not cited a single case in which a privately owned vessel, time chartered to the United States government, was subject to the exclusivity provision of the PVA or the SAA. In fact, two cases, which they cited, *Williams v. Central Gulf Lines*, 874 F.2d 1058 (5th Cir. 1989); and *Alexander v. United States*, 63 F.3d 820 (9th Cir. 1995), hold the opposite and provide the court with the definitive answer to this issue, as will be explained later in this memorandum.

3

# ARGUMENT

A.     PUBLIC VESSEL IS ONE OWNED OR UNDER DEMISE CHARTER TO THE UNITED STATES.

*Stubblefield v. Vickens Towing Co.,* 674 F.Supp. 566 (N.D. Miss. 1987), cited by defendants, gives us a definition of "public vessel", specifically finding that the vessel in the case was not a public vessel and, therefore, not subject to the PVA.

> M/V TERRI IS NOT A PUBLIC VESSEL
>
> A "public vessel" is a vessel owned or under demise charter to the United States and used by the government exclusively for a public purpose. *Blanco,* 775 F.2d at 57-60. *See also Denahey v. Isbrandtsen Co., Inc.* 80 F.Supp. 180 (S.D.N.Y. 1948). The M/V TERRI was owned and operated by Vickers Towing and under a time charter to the Corps of Engineers. Clearly, the M/V TERRI was not a public vessel.

*Id.* p. 567.

The written agreement by which the United States chartered the M/V Lummus is entitled, "Time Charter". It specifically states that it is not a demise.

> ARTICLE 35. CHARTER NOT A DEMISE
>
> Nothing herein contained shall be construed as creating a demise of the Vessel to the Charterer; the Contractor shall at all times retain complete and exclusive possession and control of the Vessel and its navigation.

(Fitzgerald Decl. Exhibit "A").

Defendants concede in its memo that the M/V Lummus, at the time of the accident, was not owned by the government. (Defts' Memo. p. 9). At the time of the accident, the M/V Lummus was privately owned and time chartered to U.S. (Defts' Memo. p. 4). The charter specifically says at Article 35 that, it is not a "demise". Under these facts and the definition above, the M/V Lummus is clearly not a public vessel.

It is inexplicable that defendants continue to attempt to persuade the court that the M/V Lummus was subject to the PVA.

B. EVERY CASE CITED BY DEFENDANTS TO SUPPORT THE APPLICABILITY OF THE PVA INVOLVES A VESSEL OWNED BY OR DEMISE (BAREBOAT) CHARTERED TO THE UNITED STATES.

At pages 8 and 9, defendants cite a series of cases to support its claim that the PVA is applicable, but unlike the M/V Lummus, which was privately owned, every case they cite involves a vessel that is either owned by the United States, or leased subject to a demise or bareboat charter.

*Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995 (9th Cir. 1997) involved a private entity under contract to operate a vessel owned by the Navy, the USNS Kane.

> At the time of the injury, the Kane was owned by the United States.

*Id.* 997.

In *Petition of the United States*, 367 F.2d 505, the vessel in question was owned by the United States, a United States Naval Ship, the USNS Mission San Francisco. *Id.* 508. *Cruz v. Marine Transport Line, Inc.*, 634 F.Supp. 107 (D.N.J.) involved a vessel that, while not owned by the United States, was under a bareboat charter to it and designated as a United States Naval Ship, the USNS Sealift Pacific. *Id.* 110.

All the vessels involved in the case of *Santos v. RCA Serv. Co.*, 603 F.Supp. 943, were vessels owned by the United States.

> The United States Navy owns all but one of the support vessels operated by RCA.

*Id.* 946.

5

*United States v. United Continental Tuna Corp.*, 425 U.S. 164, 167 n1 (1976), involved a naval destroyer, unquestionably a vessel owned by the United States. To the same effect, is *Taghadonni v. United States*, 401 F.3d 1080, which concerned a U.S. Coast Guard cutter, without doubt owned by the United States.

In *George W. Rogers Const. Co. v. United States*, 118 F.Supp. 927, the vessel in question, the Cayuse was "owned absolutely by the United States through the Maritime Commission." *Id.* 935. It was the same situation in *Roeper v. United States*, 85 F.Supp. 927 (S.D.N.Y. 1954), which involved a ship known as the SS Carl Schurz.

> The United States is a sovereign power and was and is the owner and operator of the SS Carl Schurz.

Findings of Fact (2).

Defendants have simply ignored the fact that, in every one of these cases, the vessel in question was either owned or under a demise or bareboat charter and that the M/V Lummus fits into neither of those categories because it was owned by a private entity and operating under a time charter, which gave complete and exclusive possession and control of the vessel and its navigation to the defendants. (Fitzgerald Decl. Exhibit "A").

None of these cases support the argument that the M/V Lummus was a public vessel at the time of plaintiff's accident.

C.  SUITS IN ADMIRALTY ACT DOES NOT APPLY TO VESSELS TIME CHARTERED TO UNITED STATES.

   1.  Authority Relied On By Defendants Has Been Vacated.

   Defendants cites *Stubblefield v. Vickers, supra, to* the effect that:

   > Seamen's personal injury suits arising from operation of privately owned vessels time chartered to the United States must be brought exclusively against the United States under the SAA.

6

(Defendants' Memo. p.7).

Defendants failed to inform the court that the *Stubblefield* decision was vacated and withdrawn as a result of the Fifth Circuit Court of Appeals in *Williams v. Central Gulf Lines*, 874 F.2d 1058 (5th Cir. 1989).

> ORDER
>
> SENTER, Chief Judge.
> The Court having been advised of the decision of the Fifth Circuit Court of Appeals in *Williams v. Central Gulf Lines, 874 F.2d 1058 (1989)*, and having reconsidered its Opinion filed December 2, 1987 in the instant cause HEREBY ORDERS that this Court's December 2, 1987 Opinion and Order rendering summary judgment in favor of Vickers Towing Company are vacated and withdrawn.
> SO DONE.

N.D. Miss., 1989. *Stubblefield v. Vickers Towing Co.*, 719 F.Supp. 1337.

The *Williams* case is factually identical to the case before the court and held that the private owner of a vessel time chartered to the U.S. was the proper party to sue for a seaman's personal injury and that SAA did not apply. The *Williams* decision was cited with approval by the Ninth Circuit in *Alexander v. U.S.*, 63 F.3d 820, 822 (9th Cir. 1995), which also held that the vessel's owner was the proper party and that the SAA did not apply.

In *Williams, supra,* an action for death of a seaman against his private maritime employer, involving vessel, which was time chartered to United States, the court held:

> This Circuit's rule is that a time charterer, 'who has no control over the vessel, assumes no liability for negligence of the crew or unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise' (citations omitted). The term "control" as used by this court in formulating this general rule refers to operational control of the vessel not ultimate control of its destination or cargoes.

Section 35 of the time charter for the M/V Lummus (*see* Fitzgerald Decl. Exhibit "A"), is virtually identical to that found in this case.

*Id* 1061.

> "...this circuit seems reluctant to find any shift of operational responsibility for personal injuries to the time charterer absent clear language to that effect." (citations omitted). The charter contains no clear language whereby the United States assumes responsibility for the vessel's operations or for personal injuries caused by negligence of the crew. We therefore hold that operational control did not shift from Central Gulf to the United States and that, given the specific facts at hand, the appellant would have been unable to state a claim against the United States as time charterer.

*Id* 1064.

Likewise, the charter for the M/V Lummus contains no clear language, whereby the United States assumes responsibility for the vessel's operations or personal injuries.

This case is factually identical and the holding is obviously against the defendants. It was because of this case that the court withdrew its order in *Stubblefield*.

Defendants also cite *Alexander v. United States*, 63 F.3d 820, which lends absolutely no support to its position, but rather, confirms the rule established in *Williams* as the law of the Ninth Circuit.

> The charter document in this case creates a time charter. Under traditional admiralty principles an injured seaman cannot sue a time charterer unless the seaman can show either the time charterer had enough control of the vessel to render it the owner *pro hac vice* (citation omitted) or time charterer was actively negligent.

*Id.* 823.

Defendants have submitted the self-serving declaration of Thom Merrill to support its contention that the U.S. controlled the M/V Lummus, akin to a similar argument made and rejected in *Alexander*.

> Alexander also relies on the fact that the government directed the movement and cargo operations of Santa Adela. A time charterer, however, always directs the movements and cargo operations of the ship (citations omitted). The time charterer's exercise of these

> rights is not inconsistent with the vessel owner's control of the vessel and its crew.

*Id.* 823, 824.

Defendants also claim that the United States may have been negligent because of the actions of a medical officer who treated the plaintiff after his injury. (Defts' Memo. pp.11, 12). The *Alexander* court rejected a similar claim and his court should as well. (*Id.* 824). The primary cause of action here involved negligence and unseaworthiness, in which the United States was completely uninvolved. Furthermore, responsibility for the safety of the crew resides with the captain, and it was incumbent upon him to insure that plaintiff received appropriate medical care, which in this case, would have been to have plaintiff taken ashore in Japan for an x-ray, which was possible at the time, rather than having him treated on the ship. The plaintiff, in this case, would not have been able to bring an action against the time charterer because of failings of the vessel's owner, and, therefore, it would not be able to bring this cause of action against the government. The SAA is, therefore, inapplicable.

We are unable to discern any applicability of *Western Tankers Corp. v. United States*, 387 F.Supp. 487. (Defts' Memo. p.10). The final case cited by defendants, *Favorite v. Marine Personnel and Commissioning, Inc.*, 955 F.2d 382 (5th Cir. 1992), does not support defendants' position, but completely destroys their argument.

In *Favorite*, the court held that PVA was applicable because the vessel was leased to the United States pursuant to a bareboat charter and, therefore, suit against the United States was the exclusive remedy. The court found that the vessel was a public vessel.

> The term "public vessel" in the PVA [includes] a vessel under bareboat charter to the United States and used solely in public services.

*Id.* 387.

This court found the appellant's reliance on *Williams* misplaced because:

> In Williams, this court held that the exclusivity provision did not bar a suit against a private employer by a seaman injured aboard a vessel time chartered to the United States. The court found that

9

under the time charter, the vessel was not a public vessel because the United States was not responsible for the vessel's operations or for personal injuries caused by the crew's negligence. The United States only controlled the vessel's destination and cargo and did not assume operational control.

*Id.* 387.

## CONCLUSION

The M/V Lummus was not owned by the United States and it was not operated under a bareboat charter by the United States. Therefore, the PVA is inapplicable.

Because the rule of the Ninth Circuit is that time charterers are not responsible for personal injuries on vessels that are time chartered, the SAA does not apply. Therefore, the plaintiff's employer, and not the United States, is the proper defendant in this case. Defendants' failure to produce a single case on point factually mandates that defendants' motion for summary judgment be denied.

DATED this 1st day of March, 2007.

LAW OFFICE OF WILLIAM M. FIZGERALD

By: WILLIAM M. FITZGERALD, ESQ.
Attorney for plaintiff