1  **William M. Fitzgerald, Esq.**
   **LAW OFFICE OF WILLIAM M. FITZGERALD**
2  2nd Floor, Macaranas Building
   P.O. Box 909
3  Saipan, MP 96950
   Telephone (670) 234-7241
4  Facsimile (670) 234-7530

5

6  **Bruce Berline, Esq.**
   **Law Office of Bruce Berline**
   2nd Floor, Macaranas Building
7  P.O. Box 5682 CHRB
   Garapan, Saipan, MP 96950
8  Telephone:  (670) 233-3663
   Facsimile: (670) 233-5262

9

10  Attorneys for Plaintiff

11
                    IN THE UNITED STATES DISTRICT COURT
12
                                    FOR THE
13

14                       NORTHERN MARIANA ISLANDS

15
    KENNETH COUTURE,                    )  CV NO. 05-0024
16                                      )
              Plaintiff,                )
17                                      )  **PLAINTIFF'S   MOTION   FOR**
              v.                        )  **SANCTIONS  AGAINST  DEFENDANTS**
18                                      )  **PURSUANT TO FED.R.CIV.P. 37(c)(1)**
    AMERICAN   OVERSEAS   MARINE)
19  CORPORATION and GENERAL DYNAMICS)
    CORPORATION,                        )  Date:   April 5, 2007
20                                      )  Time:  10:00 a.m.
              Defendants.               )  Judge: Munson
21  _____)

22
          **COMES NOW** Plaintiff Kenneth Couture, by and through his counsel of record, William
23
    Fitzgerald and Bruce Berline, and hereby moves this Court, pursuant to Fed.R.Civ.P. 37(c)(1) for
24
    sanctions consisting of an entry of default against Defendant General Dynamics Corporation and
25
    reasonable costs and attorney's fees against Defendants General Dynamics Corporation and American
26

27

28                                 Page 1 of  21

1  Overseas Marine Corporation based on the Defendants deceitful conduct involving egregious violations

2  of the federal discovery rules.

3

4                                                **FACTS**

5          In July of 2005, Plaintiff filed a complaint in this Court naming Defendants American Overseas

6  Marine Corporation ("AMSEA") and General Dynamics Corporation ("Gen Dyn") (occasionally referred

7  to collectively as "Defendants") as defendants liable for his injuries sustained on March 25, 2004 aboard

8  the M/V 1st Lt. Jack Lummus. *See* Plaintiff's Original Complaint; *See also* Declaration of Bruce Berline

9  ("Berline Decl.") at 1.  AMSEA and Gen Dyn are large defense contractors who own and operate a fleet

10  fo at least 26 different ships.  *See* Deposition Transcript of Tammy Ducharme, page 66, lines 15-22

11  attached as Exhibit "A" to the Berline Decl.  Included within this fleet at the time of Mr. Couture's

12  injury was the M/V 1st Lt. Jack Lummus.

13          Early on in this litigation, in September, 2005, shortly after Defendants answered Plaintiff's

14  complaint, Plaintiff's counsel sent a meet and confer letter pursuant to Rule 26(f) of the Federal Rules

15  of Civil Procedure.  *See* Letter from Bruce Berline to David Ledger, dated September 3, 2005 attached

16  as Exhibit "B" to the Berline Decl.  This letter was sent out of Plaintiff's concern with Defendants'

17  denials in their Answer to Plaintiff's complaint and requested the Defendants to clear up any confusion

18  about several topics - one such topic being the inclusion of proper defendants in the lawsuit.  In

19  Plaintiff's Rule 26(f) letter, Plaintiff requested the Defendants admit that AMSEA was his employer or

20  disclose who was at the time of his injury.  *Id*. at page 3.  Another section of the letter requested

21  information on the identification of any entities who have any ownership interests in the Lummus and

22  requested copies of any relevant charter agreements.  *Id*.

23

24

25

26

27

28                                      Page 2 of  21

In a September 22, 2005 letter, Defendants responded to Plaintiff's inquiries.  *See* Letter from David Ledger to Bruce Berline, dated September 22, 2005 attached to the Berline Decl. as Exhibit "C." In response to Plaintiff's inquiry about Mr. Couture's employer, Defendants stated:

> 2.    Employer.  It is agreed that Mr. Couture's employer is a defendant who has been named, served and appeared in the lawsuit.

*Id*. at page 1.  In response to Plaintiff's inquiry as to ownership interests in the Lummus, Defendants stated:

> 5.    Vessel owner We understand that your concern over the identity of the vessel/owner/operator/charterer is due to the claim alleging unseaworthiness. **It is agreed that the entity which could be liable for damages proven to have been caused by an unseaworthy condition or negligence has been named, served and appeared in the lawsuit.**

*Id*. at page 2 (emphasis added).  Satisfied that AMSEA and Gen Dyn were the proper defendants, Plaintiff focused his time and resources in proving the causes of action against the liable parties:  his employer - AMSEA, and the owner of the Vessel - Gen Dyn.   For nearly two years now, Plaintiff has vigorously litigated this matter against AMSEA and Gen Dyn.  Berline Decl. at 2.  Over this period of time, the parties engaged in extensive discovery.  *Id*.  The discovery consisted of the following:

*Depositions:*

1.    Carl Inglehart - Medical Services Officer, two separate depositions

2.    Plaintiff Couture - two separate depositions

3.    Captain David Hagner - deposition taken in New Jersey

4.    Tammy Ducharme - former AMSEA Chief of Insurance and Claims

5.    Chief Mate Peter Kirk - Deposition taken in Hawaii

6.    Doctor Peter Diamond - Defendant's medical expert

Page 3 of  21

1         7.     Doctor Jerome Landstrom - Plaintiff's treating orthopedic surgeon

2         8.     Doctor Raymond Lucas - Defendant's medical expert

3    *Id.* In total, the parties have completed ten depositions. In addition, the parties exchange extensive

4    written discovery in the form of interrogatories, requests for admissions and document requests.[1]

5         Through this extensive discovery process, Plaintiff has obtained admissions from the Defendants

6    which conclusively prove that General Dynamics is the owner of the Lummus, that AMSEA is Plaintiff's

7    employee, and that Plaintiff is a seaman entitled to bring Jones Act and unseaworthiness claims against

8    each respective party, along with many others relevant facts. Berline Decl. at ¶ 7. So much so that, as

9    stated in Defendant's memorandum in support of their summary judgment, Defendants' are considering

10   offering Plaintiff a stipulation to "vicarious liability for the actions of the MSO and the harm, if any,

11   steming therefrom." *See* Defendants' Memorandum in Support of Motion for Summary Judgment, at

12   12, n.4. All of these concessions, and more, were garnered as a result of this extensive and time

13   consuming discovery with the Defendants.

14        Now, Defendants AMSEA and Gen Dyn, on the eve of trial, file a summary judgment seeking

15   dismissal of Plaintiff's action on grounds, asserted by Defendants for the first time ever in this matter,

16   that the Public Vessel Act ("PVA") and the Suit in Admiralty Act ("SAA") prohibit Plaintiff from suing

17   the Defendants and limit his remedy to an action against the United States. *See* Defendants Motion for

18   Summary Judgment, filed February 1, 2007. The catch to the Defendants' motion, however, is that the

19   statute of limitations has expired for both the PVA and the SAA[2]. Thus, according to Defendants,

20   Plaintiff, after expending all of this time, effort and money, is left without a remedy for his injuries.

21

22

23

24       [1] A list of the written discovery propounded by the parties in this matter is attached as Exhibit "D" to the Berline Decl.

25       [2] The SAA and the PVA have two year statute of limitations. *Taghadomi v. United States*, 401

26   F.3d 1080, 1090 n. 11 (9th Cir. 2005).

27

28

1    In support of the summary judgment motion, the Defendants filed an declaration given by Thom

2  Merrell, the Vice President of AMSEA.  *See* Declaration of Thom Merrell in Support of Defendants'

3  Motion for Summary Judgment, filed on February 1, 2007 ("Merrell Decl.").  Defendants have also

4  produced a 74 plus page Bareboat Charter, a 145 plus page Time Charter for the Vessel, and a nearly 3

5  inch thick MSC Standard Operating Procedure Manual.  *See* exhibits B, C, and D attached to the Merrell

6  Decl.

7    Defendants assert this defense despite never disclosing it to anyone in anyway at any time for

8  nearly two years.  Berline Decl. at ¶ 12.  Defendants did not claim this defense in their answer, they

9  never discussed it with this Court or the Plaintiff, they never listed any documents or the identified

10 anyone that could be used to support such a defense in their Rule 26(a) mandatory disclosures, and they

11 never supplemented their Rule 26(a) disclosures.

12    To begin with, Defendants filed their answer on August 29, 2005.  *See* Defendants' Answer to

13 Complaint attached as Exhibit "E"to the Berline Decl. The Defendants failed to cite to the PVA, the

14 SAA or even mention the United States Government in their answer.  *Id.*  In fact under the "Defenses"

15 section of the answer, Defendants specifically state that they intend to rely upon the defenses of waiver

16 estoppel, unclean hands, statute of limitations and assumption of the risk.  *Id*. at 5.   Defendants also

17 claimed that Plaintiff was barred from maintaining an action against his employer and the vessel because

18 he was not a Jones Act Seaman and that the vessel was seaworthy.  *Id*. at 4-5.  Defendants did assert that

19 Plaintiff's damages were caused solely by the negligence of third person and circumstances of that his

20 injuries were caused by third persons over whom Defendants had no control.  *Id*. at 5.   However, as

21 shown below, the Defendants denied such defenses were available to them in their responses to

22 Plaintiff's interrogatories.

23    On August 29, 2005, this Court issued an Order Re: Case Management Conference.  *See* Order

24 Re: Case Management Conference, dated August 29, 2005 attached as Exhibit "F"to the Berline Decl.

25 That August 29th Order stated, in pertinent part that each of the parties' attorneys "shall be present at the

26

27

28

Page 5 of  21

Case Management Conference, prepared to discuss with the Judge of this Court the subjects hereinbelow outlined." *Id*. Section (j) of that Order states "Any other matter which may be conducive to the just and efficient and economical determination of the proceedings . .." *Id*. The Case Management Conference was held on September 20, 2005. Berline Decl. at ¶ 13. Defendants never brought up the issue that they were not the proper defendants. *Id*. Moreover, neither the PVA nor the SAA was ever mentioned or discussed at that conference. *Id*. Certainly, a claim that the United States is the only proper defendant and not AMSEA or Gen Dyn is something that "may be conducive to the just and efficient and economical determination of the proceedings." *See* Exhibit "F."

On October 11, 2005, Defendants filed their Initial Disclosures as required by this Court's local rules and Rule 26(a) of the Federal Rules of Civil Procedure. *See* Defendants' Initial Disclosures attached as Exhibit "G" to the Berline Decl. AMSEA and Gen Dyn never listed a Thom Merrell in their disclosure statement. *Id*. In fact, Plaintiff's counsel has never heard of Mr. Merrell until his declaration was provided to Plaintiff in February of 2007. Berline Decl. at ¶ 15. Nor did the Defendants' disclosure statement list any other AMSEA or Gen Dyn company official or United States official who possessed information that the Defendants could use to support a defense based upon the PVA or SAA. *See* Exhibit "G." Nor did Defendants ever supplement their disclosure statement with such information, as required by Rule 26(e). See Fed.R.Civ.P. 26(e); Berline Decl. at ¶ 16. The only individuals that Defendants listed in their Initial Disclosures are: Captain Hagner, Chief Mate Dan Reed, 2nd A/E William Arnost, 1st A/E Charly Smith, Chief Mate Peter Kirk, MSO Karl Englehart and Donald Farmer. *See* Exhibit "G."

The Defendants also failed to list, in their Initial Disclosures, or produce to Plaintiff, the Time Charter for the Vessel, the MSC Standard Operating Procedure Manual, or the Bareboat Charter - the only documents used by Defendants to provide support to their motion for summary judgment. *See* Exhibit "G"; Berline Decl. at ¶ 17. Defendants have never before referenced such documents in this matter. *Id*. And certainly, this is the first time Plaintiff has ever seen such documents. *Id.*

On January 11, 2007, Plaintiff served his First Set of Request for Production of Documents and Things upon Defendants' counsel. *See* Berline Decl. at ¶ 18.  Among other requests for documents contained in Plaintiff's request, was the following three requests:

27.    Any and all Documents upon which You intend to rely in support of Your claims and/or defenses in the above-captioned matter, and not otherwise produced in response to these Requests for Production.

29.    Any and all Documents Defendants' intend to introduce into evidence at trial

30.    Any and all Documents Defendants are relying on to defend this matter at trial.

Defendants chose to object to these requests instead of producing any documents such as the documents they now use for their summary judgment motion. *See* Defendants' Response to Plaintiff's First Set of Requests for Production of Documents and Things attached at Exhibit "H" to the Berline Decl. (Defendants' Response accurately quotes Plaintiff's original document requests).

On December 20, 2005, Plaintiff served his First Set of Requests for Interrogatories on Defendants' counsel.  Berline Decl. at ¶ 21.  Plaintiff's First Set of Requests for Interrogatories contained, among others, the following questions:

9.    State each and every fact which supports Your contention that Plaintiff's injuries were either caused or contributed to by third persons over whom Defendants have no control or right of control, thus barring this action against Defendants as set forth in Your answer on page 5.

10.    State each and every fact which supports Your contention that Plaintiff's damages were caused solely by the negligent superceding acts of . . . other persons and circumstances over which Defendant had no control or right of control as set forth in Your answer on page 5.

11.    State each and every fact which supports Your contention that Defendants have a defense based on the doctrine of waiver.

12.    State each and every fact which supports Your contention that Defendants have a defense based on the doctrine of estoppel.

1   13.     State each and every fact which supports Your contention that Defendants have
2   a defense based on the doctrine of unclean hands.

3   14.     State each and every fact which supports Your contention that Defendants have
4   a defense based on the statute of limitations.

5   16.     Describe any and all administrative remedies which you contend Plaintiff should
6   have exhausted in this matter.

7   17.     State each and every fact which supports Your contention that Plaintiff has failed
8   to exhaust administrative remedies.

9   *See* Defendants' Response to Plaintiff's First Set of Requests for Interrogatories attached at Exhibit "I"

10  to the Berline Decl. (Defendants' Response accurately quotes Plaintiff's original interrogatories).  The

11  Defendants' answer to each of these questions was the same - "At this time, none," or, as to the answer

12  to interrogatory no. 10 - "**[w]ith regard to acts attributable to other persons, none at this time**."  *See*

13  Exhibit "I" (emphasis added).

14  Despite establishing many, if not all, of the relevant facts in this case through this extensive

15  discovery, Defendants have never seriously discussed settlement with the Plaintiff.  Berline Decl. at ¶

16  24.  Plaintiff, on the other hand, has provided Defendants' with two separate written settlement offers,

17  the last offer being made on October 16, 2006.  *Id*. at ¶25.  However, Defendants have never provided

18  Plaintiff with a written offer or even made a counter-offer.  *Id* at 26.  In an e-mail to Plaintiff, Defendants

19  explained that their refusal to negotiate with Plaintiff was because he remains employed on the Lummus

20  and any settlement amount would become known to the crew of the vessel and it would cause a whole

21  host of problems for the Defendants.  *See* e-mail from Defendants' Counsel to Plaintiff's Counsel, dated

22  August 4, 2006 attached as Exhibit "J" to the Berline Decl.  For these reasons, the settlement conference

23  scheduled by this Court's Case Management Order was eventually taken off calendar "until the parties

24  determine that such talks may result in a resolution of the matter."  *See* Stipulation to Continue

25  Settlement Conference, attached as Exhibit "K" to the Berline Decl.  Presumably, these same reasons

26

27

28                                                Page 8 of  21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

explain why, on September 22, 2006, Defendants' declined this Court's invitation to discuss settlement during a chamber conference after this Court granted Defendants' request to continue the trial. See Berline Decl. at ¶ 29.

Curiously enough, Defendants settlement attitude has changed drastically after preparing the motion for summary judgement. In January, 2007, Defendants provided Plaintiff's counsel with a pre-filing copy of Defendants' motion for summary judgment. Berline Decl. at ¶30. Along with the copy of the motion, the Defendants sent an e-mail which stated, in pertinent part, that:

> [we] request that your client reconsider his settlement position. Our clients are willing to consider a settlement offer which takes into account the option that, should the court grant the motion, your client will recover nothing. We do not consider your client's previous offer of $175,000 to be such an offer.

See e-mail from Defendants' Counsel to Plaintiff's Counsel, dated January 8, 2007, attached as Exhibit "L" to the Berline Decl. Plaintiff declined Defendant's invitation to make an offer of settlement. Berline Decl. at ¶ 32. Despite being told that Plaintiff was proceeding to trial and no longer had an interest in settling this matter (Berline Decl. at ¶ 33), Defendants now insist on a settlement conference so that they can attempt to take advantage of their perceived advantage gained through deceit and egregious violation of the discovery rules. In fact, Defendants have gone so far as requesting this Court to compel Plaintiff's attendance at the settlement conference. See Defendants' Ex Parte Motion to Compel Plaintiff's Attendance at Settlement Conference, filed March 8, 2007. The Defendants' sudden attitude change toward settlement is no coincidence. The Defendants have intentionally mislead Plaintiff in order to put him in an extremely difficult position and to "interfere with his ability to proceed to trial" and undermine a rightful decision of this case. See Wiltec Guam, Inc., v. Kahaluu Construction Co., Inc., 857 F.2d 600, 603 -604 (9th Cir. 1988) infra. Moreover, in furtherance of the Defendants' deceitful tactics, they have wilfully and egregiously violated the rules of discovery in order to conceal their tactics

Page 9 of 21

1

2

3  from Plaintiff until the statute of limitations ran.

4                                    **ARGUMENT**

5     **I.     RULE 26(A) MANDATES DISCLOSURE OF CERTAIN INFORMATION.**

6          The Federal Rules of Civil Procedure "shall be construed and administered to secure the just,

7  speedy and inexpensive determination of every action."  Fed.R.Civ.P. 1.  One mechanism the Federal

8  Rules of Civil Procedure uses to achieve this goal is through mandatory disclosures pursuant to Rule 26.

9  Rule 26(a) of the Federal Rules of Civil Procedure mandates the automatic disclosure of certain

10  information without the necessity of any formal or informal request by an opposing party.  See Fed R.

11  Civ. P. 26(a).  Pertinent to this motion are the categories of mandatory information listed in Rule

12  26(a)(1)(A) and (B).

13          Rule 26(a)(1)(A) requires the automatic disclosure of:

14                  the name and, if known, the address and telephone number of each
15                  individual likely to have discoverable information that the disclosing
                    party may use to support its claims or defenses unless solely for
16                  impeachment, identifying the subjects of the information.

17          Rule 26(a)(1)(B) requires the automatic disclosure of:

18                  a copy of, or a description by category and location of, all documents,
19                  data compilations and tangible things that are in the possession, custody
                    or control of the party and that the disclosing party may use to support its
20                  claims or defenses, unless solely for impeachment.

21     **A.     *The Mandatory Disclosure Provision under Rule 26(a) Encompass the Witness
22             and Documents Defendants Use to Support their Summary Judgment.***

23          Rule 26(a)(1)(A) and (B) mandates the disclosure of information "that the disclosing party may

24  *use* to support its claims or defenses. . ."   The Advisory Committee's notes to 26(a)(1)(A) and (B)

25  defines the term "Use" to include " any use at a pretrial conference, to support a motion or at trial." *See*

26

27                                    Page 10 of  21

28

1
2
3
4
5
6
7
8

Fed.R. Civ.P. 26 advisory committee's note, 2000 amendment, subdivision (a)(1).  Certainly, the Defendants' use of the evidence supporting their summary judgment motion fits squarely within the Rule 26(a)(1)'s scope of mandatory disclosure.  The evidence used by Defendants to support their allegations, made in the motion for summary judgment, that they are not a proper party to this litigation, along with any other evidence which may support such allegations, were required by the discovery rules to be disclosed to Plaintiff at the beginning of this litigation - nearly two years ago.

9
10

**B.      *Defendants Failed to Disclose Any Information Used to Support Their Summary Judgment to Plaintiff.***

11
12
13
14
15
16
17
18
19

Here, AMSEA and Gen Dyn provided Plaintiff with their Initial Disclosures, pursuant to Fed. R.Civ. P26(a)(1) and this Court's local rule LR 16.2CJ(d) on October 11, 2005.  See Exhibit "G."  For the purposes of satisfying the disclosure mandates of Rule 26(a)(1)(A), the Defendants provided a list of the crewmen serving aboard the M/V 1st Lt. Jack Lummus and listed the following names:   Captain Hagner, Chief Mate Dan Reed, 2nd A/E William Arnost, 1st A/E Charly Smith, Chief Mate Peter Kirk, MSO Karl Englehart and Donald Farmer.  *Id.*  The Defendants also included "[a]ll health care providers who have treated the plaintiff."  *Id.* at page 2.   Thom Merrill was not listed in Defendants' Initial Disclosures, nor was any other AMSEA or Gen Dyn company official.  *Id.*  Moreover, the Defendants failed to list anyone representing the United States.  *Id.*

20
21
22
23
24
25

To satisfy the mandates of Rule 26(a)(1)(B), the Defendants attached a myriad of documents to their Initial Disclosures.  These documents consisted mainly of invoices, medical records and crew lists relevant to the voyage upon which Plaintiff Couture was injured and the injury itself.  Berline Decl. at ¶ 34.  None of these documents that the Defendants now use to support their motion for summary judgment, the Bareboat Charter, the Time Charter nor the MSC operating manual, were attached to the Initial Disclosures.  *Id.* at ¶ 35.  Plaintiff was not provided these documents until February 16, 2007

26
27
28

Page 11 of  21

1

2

3    when they served with the motion for summary judgment. *Id*. at ¶ 36.  In fact, because the Defendants

4    deemed these documents strictly confidential, Defendants' filed them with this Court under seal and

5    required Plaintiff to agree to keep the documents confidential in order to review them.  See Defendants'

6    Ex Parte Motion Allowing Defendants to File Under Seal, filed February 5, 2007; Berline Decl. at ¶ 37.

7        Rule 26(f) requires a party to supplement initial disclosures "if the party learns that in some

8    material respect the information disclosed is incomplete or incorrect" and this information "has not

9    otherwise been known to the other parties during the discovery process or in writing." Fed.R.Civ.P.

10   Rule 26(f)(1).  Defendants never supplemented their initial disclosures with any information relevant

11   to the allegations made in their motion for summary judgment.  Berline Decl. at ¶ 38.

12       Despite failing to comply with Rule 26(a)(1)(a), failing to supplement the initial disclosures, and

13   failing, otherwise, to disclose Mr. Merrell to the Plaintiff, the Defendants now use his testimony to

14   support their motion for summary judgment - a motion purposefully timed to make it appear that

15   Plaintiff will be left without a remedy in order interfere with his ability to proceed to trial and to coerce

16   a settlement from him.

17       Similarly, the Defendants now produce the Bareboat Charter, the Time Charter and the MSC

18   Operating Manual in support their motion for summary judgment.  And just like Mr. Merrell's

19   information above, Defendants have failed to disclose a copy, or even a description of these documents

20   in its Initial Disclosures until now, after nearly two years of litigation.  Berline Decl. at ¶ 17.

21       Certainly, as giant defense contractors leasing ships to the United States military, AMSEA and

22   Gen Dyn is well versed in the applicability of the PVA and the SAA.  Clearly, AMSEA and Gen Dyn

23   knew full well about any potential application of these laws at the time Plaintiff served his complaint

24   upon the Defendants.  Thus, Defendants cannot be excused in any way from failing to disclose this

25   information in their initial disclosures or, at a bare minimum, through supplementation of their

26

27                                         Page 12 of  21

28

1

2

3

4    disclosures pursuant to Rule 23(e).  Accordingly, there is no question that Defendants have wilfully and

egregiously violated Rule 26(a)(1) and Rule 23(e).

5

6    **II.    RULE 37 PROVIDES THE APPROPRIATE SANCTIONS FOR VIOLATIONS OF RULE 26.**

7    Rule 37 sanctions exist "to punish evasion of pretrial discovery."  *Wanderer v. Johnston*, 910

8    F.2d 652, 656 (9th Cir. 1990)(quotations and citation omitted).  Rule 37(c)(1) provides sanctions for

9    Defendants' failure to disclose information mandated by Rule 26(a)(1).  Rule 37(c)(1) states that:

10           [a] party that without substantial justification fails to disclose information
             required by Rule 26(a) ... is not, unless such failure is harmless, permitted
11           to use as evidence ... any witness or information not so disclosed.

12   In addition to the exclusion sanction, Rule 37(c)(1) permits the court to "impose other

13   appropriate sanctions" and includes "the payment of reasonable expenses, including attorney's fees,

14   caused by the failure" and "sanctions authorized under Rule 37(b)(2)(A), (B) and (C)."  Fed.R.Civ.P.

15   37(c)(1).  Accordingly, Rule 37(c)(1), because it includes sanctions under Rule 37(b), provides a broad

16   range of sanctions for a party's violation of Rule 26(a)'s mandatory disclosure provisions.  As stated in

17   *United States v. Sumitomo Marine and Fire Ins. Co. Ltd.*, 617 F.2d 1365, 1369 (9th Cir. 1980)[3], under

18   Rule 37(b):

19           In ascending order of harshness, the district court may: require the
             delinquent party or his attorney to pay the reasonable expenses, including
20           attorney's fees, incurred by the innocent party as a result of the failure to
             obey the order; strike out portions of pleadings; deem certain facts as
21           established for purposes of the action or preclude admission of evidence
             on designated matters; dismiss all or part of the action; or render a default
22           judgment against the disobedient party.

23

24   _____

     [3]  In *United States v. Sumitomo Marine and Fire Ins. Co. Ltd.*, a party failed to obey pre-trial
25   orders of the district court, as opposed to here, the failure to disclose mandatory information; however,
     Rule 37 punishes both types of conduct.
26

27                                          Page 13 of  21

28

1

2

3

4      **A.    Defendants Wilful and Egregious Discovery Violations Warrant the Most Severe
        Sanctions under Rule 37(b).**

5      Rule 37(b)(2)(C) allows, in pertinent part, a court to "render[] a judgment by default against the

6  disobedient party."  This Court has "considerable discretion to impose the extreme sanction of dismissal

7  or default where there has been flagrant, bad faith disregard of discovery duties."  *Wanderer v. Johnston*,

8  910 F.2d 652, 655-56 (9th Cir. 1990) *citing  National Hockey League v. Metro Hockey Club, Inc.*, 427

9  U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976).  Defendants' discovery violations in this

10  matter are especially egregious.  The Defendants' failure to disclose supporting information pertaining

11  to the allegations in their summary judgment are an intricate part of their plan to prejudice, severely,

12  Plaintiff by withholding information or providing misleading information in order to prevent Plaintiff

13  from proceeding to trial and, instead, coerce a settlement.   Because of Defendants "flagrant, bad faith

14  disregard of discovery duties" (*Id.*), the only appropriate sanction is to order the default of General

15  Dynamics under Rule 37(b)(2)(C).

16      Here, in September of 2005, Plaintiff asked Defendants if they were the proper parties in this

17  lawsuit.  Defendants affirmatively agreed, in writing, that they were the correct defendants. See Exhibit

18  "C."  Relying on Defendants' affirmative representations, Plaintiff set aside his concerns about the

19  proper defendants in this matter and focused his time and resources in proving the causes of action

20  against his employer, AMSEA, and the owner of the Vessel, Gen Dyn.

21      After substantiating many of the needed facts to support Plaintiff's claims through extensive

22  discovery, he offered to settle the matter with the Defendants.  Berline Decl. at ¶ 25. However,

23  Defendants surprisingly refused to participate in any reasonable negotiations or attend a settlement

24  conference providing excuses such as the risk of a flood of baseless complaints against them if they

25  settled this matter.  *See* Exhibit "J."  Instead, Defendants required Plaintiff to continue to litigate this

26

27                              Page 14 of  21

28

1

2

3

4

matter until the statute of limitations ran against the United States - the party that Defendants now contend holds Plaintiff's exclusive remedy.

5

6

7

8

9

10

11

12

13

14

15

After Defendants filed their summary judgment motion, Plaintiff sent a terse letter to the Defendants stating that their motion is frivolous and requesting the withdrawal of the motion. See Letter from William M. Fitzgerald to counsel for Defendants, dated February 26, 2007 attached as Exhibit "M" to the Berline Decl. Defendants refused to do so. Berline Decl. at ¶ 39. Instead, the Defendants request this Court to calendar a settlement conference and compel Plaintiff's attendance so that they could follow through with their plan and attempt to coerce Plaintiff into settling by threatening him with an impending dismissal pursuant to the PVA and SAA. Defendants' tactics and conduct are replete with bad faith and constitute an egregious violation the Federal Rules of Civil procedure and the spirit of fair but zealous litigation. Accordingly, Plaintiff is requesting this Court to enter General Dynamic's default in this matter as a sanction for their deceit, and for their willful, egregious and continuous violation of Rule 26.

16

17

18

19

20

To determine if such a sanction of default under Rule 37(b)(2)(C) is appropriate, a court must consider the following five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Wanderer v. Johnston*, 910 F.2d at 656 (citations omitted).

21

22

1.    *The Public's Interest in Expeditious Resolution of Litigation and the Court's Need to Manage its Docket.*

23

24

25

These two factors favor the entry of default against the Defendants. See *Wanderer v. Johnston*, 910 F.2d 652, 656, (9th Cir. 1990)("The first two factors favor the imposition of sanctions in most cases"). If Defendants are not punished with a default judgment, then there will be another substantial

26

27

28

Page 15 of 21

1
2
3
4       delay in bringing this action to trial.  This matter has been litigated for nearly two years.  The original
5       trial date was calendared for August 28, 2006.  *See* Exhibit "F."  By stipulation, the parties agreed to
6       continue the trial date to November 27, 2006.  *See* Order Granting Stipulation Extending Case
7       Management Deadlines, filed June 12, 2006.  Thereafter, the trial date was continued to April 9, 2007,
8       at the behest of the Defendants because they insisted that their material witnesses, Captain David Hagner
9       and Chief Mate Kirk, be available for trial.  Berline Decl. at ¶ 40; *See also* the Amended Case
10      Management Scheduling Order attached as Exhibit "N" to the Berline Decl.  Now, after aggressively
11      defending this matter, completing discovery and continuing the trial date,  Defendants now file a motion
12      for summary judgment claiming that the PVA and/or the SAA relieves them of liability in this matter
        and requests that this  Court dismiss them from the case.
13              In response, Plaintiff Couture has filed an opposition to the Defendant's Motion for Summary
14      Judgment and has also filed a Rule 56(f) motion for a continuance of discovery.  If this Court feels the
15      summary judgment has any merit at all, for reasons asserted in Plaintiff's Rule 56(f) motion, he should
16      be allowed to take the deposition of Thom Merrell, and depose, for the second time, Captain Hagner,
17      Chief Mate Kirk and Tammy Ducharme in order to resist Defendants' assertion that the United States
18      had operational control over the Lummus.  Additionally, Plaintiff should be allowed to file his own
19      summary judgment to show that as a matter of law, neither the PVA or the SAA apply in this case.
20      Moreover, Plaintiff should be able to depose the appropriate persons to establish that the United States
21      had timely notice in order to amend his complaint and add the United States as a party.  Assuming
22      *arguendo* that the United States is brought into this action, the parties will have to start from the
23
24
25
26
27
                                            Page 16 of  21
28

1

2

3    beginning.[4]  Accordingly, there can be no dispute that seeking this additional discovery would, once

4    again, result in "serious disruptions" of this Court's trial schedule.  *See Wiltec Guam, Inc., v. Kahaluu*

5    *Construction Co., Inc.*, 857 F.2d 600, 603 -604 (9th Cir. 1988) ("[C]ases in which we have upheld orders

6    of dismissal have often involved serious disruptions of the district court's trial schedule"); *Malone v.*

7    *U.S. Postal Service*, 833 F.2d 128, 131 (9th Cir. 1987). (Plaintiff's "dilatory conduct greatly impeded

8    resolution of the case and prevented the district court from adhering to its trial schedule"); *Thompson*

9    *v. Housing Authority*, 782 F.2d 829, 831-32 (9th Cir. 1986)(Plaintiff's conduct required continuing

10   pretrial conference three times).

11            2.      *The Risk of Prejudice to the Party Seeking Sanctions.*

12            The risk of prejudice is a key element that is essential to this Court's analysis.  *Wanderer v.*

13   *Johnston* 910 F.2d at 656.  "This factor requires an evaluation of whether the innocent party has been

14   prejudiced.  Prejudice in this context, is defined as whether [the Defendants'] actions impaired [Plaintiff

15   Couture's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Fargo*

16   *Pacific Inc. v. Imamura*, 1997 WL 208983 (D. Guam) at *5 (citing *Wiltec Guam, Inc., v. Kahaluu*

17   *Construction Co.*, Inc., 857 F.2d at 604).  Defendants here are large sophisticated defense contractors

18   who are in the business of time chartering multi-million dollar vessels to the United States and are

19   represented by knowledgeable maritime lawyers.  It is absurd to think that Defendants suddenly

20   discovered the PVA and the SAA after they gave written confirmation to Plaintiff that they were indeed

21   the proper  defendants in this litigation.  And even if Defendants advance such an absurd notion, they

22   still failed to supplement their disclosures under Rule 23(e) at the time they "discovered" the statutes.

23

24   _____

25           [4] If this hypothetical indeed becomes reality, Plaintiff will ask this Court to award attorney's fees
     and costs for all the work done to date by Plaintiff's attorneys as additional sanctions against the
26   Defendants.

27

28                                          Page 17 of  21

1

2

3

No other conclusion may be reached other than the Defendants purposefully misled Plaintiff into

4

believing that he had sued the correct defendants, and then Defendants intentionally violated Rule 26(a)

5

in order to prevent Plaintiff from thinking otherwise.   All the while, Defendants were patiently laying

6

in wait for the statute of limitations against the United States to expire.   Once the PVA and SAA's two

7

year statute of limitations expired, Defendants filed their summary judgment asserting that, pursuant to

8

the PVA and SAA, the United States is the only viable defendant.   Defendants have attempted to leave

9

Plaintiff without a remedy through active deception and willful withholding of information. There is no

10

greater prejudice than this.

11

Clearly, Defendants' intended to impair Plaintiff's "ability to proceed to a trial" and to "interfere

12

with the rightful decision of the case" (*Wiltec* at 604) by: (1) agreeing with Plaintiff that they were the

13

correct defendants, and (2) withholding information which might possibly contradict such agreement

14

in order to lead Plaintiff down a road that leads to nowhere.   Defendants allowed Plaintiff to expend

15

tremendous resources and time litigating against them, with Defendants all along resisting any kind of

16

settlement talks or negotiations.   Now that the statute of limitations against the United States have

17

lapsed, suddenly Defendants produce reams of previously undisclosed documents along with an

18

undisclosed witness in support of a summary judgment that threatens to leave Plaintiff with no remedy

19

at all.

20

If there is any doubt left about Defendants' intentional bad faith in this matter, that doubt is

21

dispelled by Defendants' newly found interest in settling this matter. For the first time ever, Defendants

22

are not only requesting to settle with Plaintiff, they are demanding it.   Defendants sent an e-mail to

23

Plaintiff, along with their draft summary judgment, requesting that Mr. Couture "reconsider his

24

settlement position."  *See* Exhibit "L."

25

26

27

28

1

2

3

The e-mail further stated that the Defendants:

> request that your client reconsider his settlement position. Our clients are willing to consider a settlement offer which takes into account the option that, should the court grant the motion, your client will recover nothing. We do not consider your client's previous offer of $175,000 to be such an offer.

*Id*. Defendants' change in attitude is no coincidence. A settlement conference is vital to the Defendants' scheme because it allows them to directly threaten Plaintiff with a possible dismissal of his case should he not accept their offer.

In response, Plaintiff declined to accept Defendants' coerced offer, stating in essence that, at this juncture, Plaintiff is proceeding to trial and that there would be no more settlement offers . Berline Decl. at ¶ 33. As could be predicted, Defendants were not swayed by Plaintiff's refusal to negotiate, they simply applied to the Court and demanded a settlement conference. And when Defendants found out that Plaintiff would not agree to personally attend the settlement conference, they, of course, were forced to ask this court to order Plaintiff's personal appearance. *See* Defendants' Ex Parte Motion to Compel Plaintiff's Attendance at Settlement Conference, filed March 8, 2007. There simply can be no doubt as to Defendants' egregious and intentional bad faith in this case. Nor can there be any doubt that such bad faith has clearly impaired Plaintiff's "ability to proceed to a trial and threatens to interfere with the rightful decision of the case." *Wiltec Guam, Inc., v. Kahaluu Construction Co.*, Inc., 857 F.2d at 604.

D.    *Public Policy of Deciding Matters on their Merits*.

This element "cuts against a default or dismissal sanction" *Wanderer v. Johnson*, 910 F.2d at 656. However, here, this element is heavily outweighed by the first three factors. Moreover, under these circumstances, this element should be given little or no weight by this Court because here, Defendants themselves are trying to avoid a trial on the merits. A trial that would present evidence of Defendants' clear liability to a jury. In place of a fair trial, Defendants have attempted to prejudice Plaintiff in order

1

2

3

4       to force him to settle. Certainly, public policy was not meant to protect or condone this sort of bad

behavior.

5              E.       *Availability of Lesser Sanctions.*

6              Another key factor is the availability of lesser sanctions. *Wanderer v. Johnson*, 910 F.2d at 656.

7       "As a general rule, a district court must consider less severe alternatives and discuss them if it elects to

8       dismiss." *Wiltec Guam, Inc., v. Kahaluu Construction Co.*, Inc., 857 F.2d at 604(citations omitted).

9       However, although this is the preferred course of action, the Ninth Circuit has "never held that explicit

10      discussion of alternatives is *necessary* for an order of dismissal to be upheld." *Malone v. United States*

11      *Postal Service*, 833 F.2d 128, 132. Thus, in "exceptional cases," meaning those cases presenting

12      "egregious circumstances," "where it is clear no other alternative would have been reasonable," the

13      district court may enter a default without such a discussion of lesser sanctions. *Wiltec Guam, Inc., v.*

14      *Kahaluu Construction Co.*, Inc., 857 F.2d at 604. Defendants conduct constitutes an especially

15      egregious example of discovery abuse and as such no discussion of less drastic sanctions is needed.

16      Nothing less than an entry of default will adequately punish Defendants for their dishonest and egregious

17      conduct and no other sanction will rectify the damage done to Plaintiff's case.

18                                              CONCLUSION

19             After considering Defendants' egregious conduct and properly weighing the above five factors,

20      Defendants' default is clearly warranted in this matter. Defendants have purposefully deceived Plaintiff.

21      They have wilfully, in bad faith, violated the discovery rules, specifically Rule 26, in order to gain an

22      unjust advantage over Plaintiff, forcing him to forego a trial on the merits and instead severely

23      compromise his action through a coerced settlement. For the above stated reasons, this Court should

24      severely punish Defendants for their outrageous and particularly egregious behavior by entering a default

25      against General Dynamics Corporation and awarding costs and reasonable attorney's fees to Plaintiff's

26

27

28                                          Page 20 of 21

1

2

3

4   counsel for the time incurred in opposing  Defendants' motion for summary judgment, for drafting

5   Plaintiff's Rule 56(f) motion and for bringing this motion for sanctions.

6       Dated this 9th day of March, 2007

7

8

9
                                                    _____//S//_____
10                                                  BRUCE BERLINE
                                                    WILLIAM M. FITZGERALD
11                                                  Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    Page 21 of  21