CARLSMITH BALL LLP

DAVID LEDGER (CNMI BAR NO. F0195)
Carlsmith Ball LLP Building
Capitol Hill
Post Office Box 5241
Saipan, MP 96950-5241
Tel No. 670.322.3455

Attorneys for Defendants
American Overseas Marine Corporation
and General Dynamics Corporation

IN THE UNITED STATES DISTRICT COURT

FOR THE

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| KENNETH COUTURE,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>AMERICAN OVERSEAS MARINE CORPORATION and GENERAL DYNAMIC CORPORATION,<br><br>　　　　　Defendants. | CIVIL ACTION NO. CV05-0024<br><br>DEFENDANTS' EX PARTE MOTION *UNDER LOCAL RULE 7.1.h.3(b)* TO SHORTEN TIME TO HEAR *AMENDED* MOTION FOR SANCTIONS; CERTIFICATION PURSUANT TO LOCAL RULE 7.1.H.3(B); MOTION FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS A & B; DECLARATION OF SERVICE<br><br>DATE: APRIL 5, 2007<br>TIME: 10:00 A.M. |

### PRELIMINARY STATEMENT

On March 16, 2007 Defendants filed the instant motion in essentially the same form as that which follows below. Subsequent to filing the motion, discussions between Defense and Plaintiff's counsel took place which called into question certain representations made in the initial motion and the declaration supporting it. As a result of such discussions, the motion and declaration filed on March 16, 2007 are hereby withdrawn and replaced with the instant amended motion.

4832-4584-9857.1.053276-00011

The difference between this amended motion and the amended declaration filed in support, and that which were filed on March 16, 2007, concerns the chronology of events which occurred at the deposition of Carl Inglehart on May 25, 2006; in particular, whether or not Defense counsel first saw Inglehart's altered medical records *prior to the commencement of Inglehart's deposition, or during a break in the deposition.* Contrary to defense counsel's recollection and assertion as stated in the initial motion, Plaintiff's counsel asserts it was during a break in the deposition. For purposes of this motion, defense counsel will not challenge the assertion that it was during the deposition rather than prior to it. There is not, however, any dispute between counsel that Plaintiff's counsel was in possession of the altered medical records as of April 25, 2006, and did not disclose them to defense counsel until May 25, 2006 when Inglehart's deposition was taken.

## EX PARTE MOTION UNDER LOCAL RULE 7.1.H.3(B) TO SHORTEN TIME TO HEAR AMENDED MOTION FOR SANCTIONS

Defendants American Overseas Marine Corporation and General Dynamic Corporation move this Court for an Order shortening time to hear its Amended Motion for Sanctions on April 5, 2005. This Ex Parte Motion is based the attached Certification Pursuant to Local Rule 7.1.H.3(b), and on the current schedule of the Court, which has set Plaintiff's Motion for Sanctions to be heard on April 5, 2005.

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1.H.3(B).

American Overseas Marine Corporation and General Dynamic Corporation have complied with the requirements for moving Ex Parte for an Order granting Motion for Sanctions.

Counsels' respective, phone, fax, and office locations appear in this pleading.

Counsel for Defendant, David Ledger, on March 15, 2007 during the hearing of defendants' motion for summary judgment notified opposing counsel of this motion and the accompanying ex parte motion to shorten the time to hear this motion to April 5, 2007, the same

4832-4584-9857.1.053276-00011                -2-

date on which Plaintiff's motion for sanctions is scheduled to be heard.

The basis for the ex parte application is that the motion should be heard on the same day as Plaintiff's motion for sanction, April 5, 2007.

Based on the foregoing, AMSEA and GENDYN hereby respectfully request the Court to GRANT this Ex Parte Application to shorten time and to set this Motion for Sanctions to be heard on April 5, 2007.

DATED: March 19, 2007.

CARLSMITH BALL LLP

_____
DAVID LEDGER
Attorneys for Defendant
American Overseas Marine Corporation

## AMENDED MOTION FOR SANCTIONS

Defendants American Overseas Marine Corporation (AMSEA) and General Dynamics Corporation (GENDYN) pursuant to Local Rule 7.1.h.3(b) and LR 12.1, move for an Order granting the instant Amended Motion for Sanctions.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

This motion seeks to preclude Plaintiff from utilizing in any way medical records which Medical Services Officer Carl Inglehart improperly altered subsequent to treating the Plaintiff's finger injury in March 2004.[1] The *UN*altered records are attached as Exh. A, the altered records as Exh. B. Defendants produced the unaltered records at the inception of the case as part of Rule

---

[1] Inglehart was not employed by Defendants when he treated the Plaintiff or when he altered the medical records. Defendants acknowledge that for purposes of meeting their duty to provide proper medical care Inglehart was their chosen provider and that responsibility for any shortcomings in the care provided ultimately rests with Defendants. But that is where it ends. As a civilian employed by the Military Sealift Command assigned to provide medical care for U.S. Navy personnel on board the vessel, and in having complete control over and responsibility for his own medical records, Defendants are not saddled with Inglehart's actions in altering medical records because his motivation for doing so were purely his own and in now ay attributable to AMSEA.

26 disclosures. The basis of this motion is that Plaintiff's counsel improperly and intentionally concealed the existence of the altered medical records when they should have been disclosed at the time Plaintiff came into possession of them.

Defendants have informed the Court that they agree that altering the medical records was improper and perhaps even motivated by an ill-advised attempt by Inglehart to cover up a mistaken diagnosis and incomplete treatment of the injury. In particular, the medical records prepared contemporaneous with the treatment (Exh. A) contain no reference to Inglehart advising the Plaintiff to get an x-ray of the injured finger. Defendants and their medical experts recognize that the injury warranted an x-ray to determine whether or not the finger was fractured, and that failure to provide an x-ray would not meet the standard of care for medical treatment in this instance. It is a known fact that Defendants played no role whatsoever in Inglehart's decision to alter the records or in the alteration itself.

## II. Factual Background

As noted above, the unaltered medical records were produced from defendants' files in initial disclosures. Plaintiff's medical records were not part of the vessel's medical records normally maintained by the vessel's chief mate[2] and at AMSEA headquarters. This is because Inglehart was a civilian employed by the Military Sealift Command assigned to the U.S. Navy personnel on board the vessel as their dedicated medical services officer. Since Plaintiff's finger injury required more specialized care than the chief mate had training to provide, he sought assistance and medical care from Inglehart, who was much more highly trained and experienced in treating injuries such as this one. In hindsight, that was a "mistake" which has haunted

---

[2] The chief mate on AMSEA vessels is the designated medical services provider for AMSEA crewmen. However, his training is limited to basically "first-aid" and in certain approved situations administering drugs. The chief mate would be the custodian of records for medical care so provided, which in turn would be AMSEA records and files.

AMSEA.[3]

Turning to the matter of the altered medical records, Plaintiff's counsel kept the existence of the records secret with the specific intent to set and spring a trap on Defendants from which there could be no escape. As it turned out, Defense counsel did not become aware of the existence of the ALTERED medical records until May 25, 2006 at Plaintiff's deposition of Inglehart. Until the deposition, Defense counsel had no hint that Plaintiff's counsel had obtained the altered records from Inglehart a month earlier on April 25, 2006 but had intentionally not disclosed them. What follows is a chronological list of events which occurred, in the form of a sworn declaration.

1.    At the inception of this action Inglehart's unaltered medical records were produced in initial disclosures. Those records came from AMSEA's home office files. Deposition testimony has shown that AMSEA obtained the medical records by way of its ship-board personnel copying the records from Inglehart's original medical log book and forwarding them to AMSEA headquarters in Massachusetts.

2.    Plaintiff noticed the deposition of Carl Inglehart for April 25, 2006. Inglehart asked for a one month continuance due to personal business off-island. Plaintiff's counsel informed me of this and informed me that they would allow the continuance if Inglehart could show that he in fact had pre-existing travel plans. As a result, I did not appear for the April deposition nor did I have any contact whatsoever with Inglehart.

3.    Plaintiff's counsel informed me that as a condition of allowing the continuance of the deposition, they asked Inglehart to provide a copy his plane ticket to confirm the off-island travel he said he had to undertake. Plaintiff's counsel subsequently informed me that Inglehart

---

[3] Although it has not yet come out in evidence put before the Court, it is undisputed that once Capt. Hagner recognized that additional medical care was needed, such care was immediately ordered and the care was continued at no cost to plaintiff until the treating doctors cleared Mr. Couture to work.

had provided a copy of his plane ticket, and that accordingly the deposition would be noticed to take place on May 26, 2006. *It was subsequently learned that at the same time Inglehart had provided a copy of his plane ticket to opposing counsel he had also provided them copies of his <u>altered</u> medical records. Neither this fact nor the altered records were disclosed to defense counsel.*

4. When I appeared for the deposition on May 25, 2006 I was shown a copy of the plane ticket Inglehart had provided, *but was still not shown the altered medical records he had provided together with the plane ticket.*

5. When Inglehart appeared for the deposition I requested a few minutes to meet with him prior to beginning testimony because I had never before spoken to him about the case. One of plaintiff's two lawyers agreed, but the other seemed oddly reluctant. I was given a few minutes to meet with Inglehart privately. I was later told by one of plaintiff's lawyers that the other was anxious to interrupt my pre-deposition meeting with Inglehart.

6. During my meeting with Inglehart he explained that he had "been here about a month ago when he had come in to show his plane ticket" and that at that time he had also dropped off copies of his medical records on Mr. Couture. My response was "fine, because I too had copies of Mr. Couture's medical records from AMSEA's file", and had provided copies to Plaintiffs lawyers as was routinely done in litigation.

7. Inglehart's deposition resulted in comparing the altered medical records Inglehart brought to the deposition, and a month earlier had provided to Plaintiff's counsel, with the ones I had produced in discovery. The records were different in that Inglehart's altered records contained several entries referencing instructions to Mr. Couture to get x-rays. I informed Inglehart that he must offer a plausible explanation for two sets of medical records which said something different. He told me that when he had "heard rumors" that he was being blamed for

Plaintiff's condition for not advising Mr. Couture to get an x-ray, he "went back and inserted the x-ray language to confirm the verbal advice he had given [Mr. Couture] at the time of treatment about getting x-rays".

8. I was shocked to learn Plaintiff's counsel had in fact obtained the altered records from Inglehart back in April when he provided a copy of his plane ticket, and yet had never disclosed the existence of such records to me; *not even when I was told about the plane ticket or later when I was shown a copy of the plane ticket*. Instead, opposing counsel had intentionally kept secret the existence and their copies of the altered medical records notwithstanding that they rather obviously intended to rely heavily on the altered records to support their contention and claim that Inglehart (and thus AMSEA) had failed to meet the standard of care for medical treatment by failing to diagnose a fracture and order an x-ray as part of treatment. It was also apparent that they intended to use the altered records to discredit a witness they contended was an agent of AMSEA at the time he rendered medical care to plaintiff.

9. It was obvious that Plaintiff's counsel had all along intentionally kept the *altered* records secret as part of their plan to spring them on me by surprise during Inglehart's deposition, while at the same time springing the *unaltered* records I had produced in discovery on Inglehart during his deposition. Instead, the altered records should have in my view been treated like discovery materials and produced by way of supplemental disclosures.

10. My ensuing investigation into this situation included obtaining the *original* medical logbook off of the vessel to see whether or not the x-ray language was on the original, which it was. I provided the original logbook to Plaintiff's counsel for inspection and copying at the subsequent deposition of Inglehart which I took.

///

///

11.     Pursuant to 28 USC Section 1746, I declare under penalty of perjury that the above numbered paragraphs 1 through 10 are true and correct to the best of my recollection of the events therein described.

Dated: March 19, 2007:               _____
                                      David Ledger

### III. Discussion

Defendants seek the imposition of sanctions pursuant to Federal Rule of Civil Procedure 37. Rule 37 *compels* the imposition of sanctions for failure to disclose discoverable information. Rule 37 states:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

Fed. R. Civ. P. 37(c)(1). Other available sanctions include (1) designating facts as established, (2) refusing to allow the disobedient party to support or oppose designated claims or defenses; (3) prohibiting that party from introducing designated matters in evidence, or (4) treating as a contempt of court the failure to obey any orders. Fed. R. Civ. P. 37(b), (c). Sanctions imposed pursuant to Rule 37 must be both "just" and based on the full record before the Court. *Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707 (1982).

Evidence which is withheld from another party is characterized as spoliated evidence. The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to the necessity to redress conduct which abuses the judicial process. *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). The policy of the Court's inherent power in this regard is to preserve the integrity of the judicial

process in order to retain confidence that the judicial process works to uncover the truth. *Id.* The Court thus has broad discretion to sanction for spoliation, as long as the sanction serves the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine. *Id.* The sanction also depends on (1) the degree of prejudice suffered by the opposing party; (2) whether the prejudice can be cured; (3) the practical importance of the evidence; (4) whether the plaintiff was in good faith or bad faith; and (5) the potential for abuse if the evidence is not excluded. *Id. See also Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 111 n.3 (E.D. Pa. 2005).

Sanctions are warranted here because of the sharp practice involved and the prejudice and abuse this has inflicted and will continue to inflict on Defendants. Rather than disclosing the altered medical records upon immediately becoming aware of them in April 2006, Plaintiff's counsel kept the existence of the records secret with the specific intent to set and spring a trap on Defendants from which there could be no escape.

Plaintiff intentionally withheld critically important documentary evidence from Defendant so as to be able to "blind-side" defense counsel and the deponent during a deposition, thereby spoliating the evidence and prejudicing Defendant. Instead of turning the altered medical records over to Defendant when they came into possession of them on April 25, 2006, and all the while knowing full well of their intentions to use the medical records prove their claims, opposing counsel hid them until May 25, 2006. Furthermore, Plaintiff has since utilized the Inglehart altered records to trap Defendant into a position that does not focus on the truth or any relevant issue, but rather is admittedly aimed at inflaming the jury to enhance a jury verdict. This is paradigm bad faith litigation and should not be permitted at trial of this action.[4]

---

[4] This situation is markedly different from the example the Court discussed during settlement conference. In that instance the court noted that admitting to intoxication in a case where intoxication is the cause of the harm is not grounds for excluding evidence of the level of intoxication during the trial. Defendant agrees with this example because the level of intoxication continues to be relevant to the actual harm caused even if the intoxication itself is admitted. This case is an entirely different situation. Here, Defendants acknowledge that the standard for medical

If this conduct is not redressed, Plaintiff will seek and perhaps be permitted to improperly inflame the jury utilizing evidence under the auspices of bad faith on the part of the Defendants while knowing full well that Defendants had nothing to do with the alteration of records, that it was an ill-advised independent act of the medical services officer who was not employed by Defendants, and also knowing full well that the altered records have absolutely no relevance to any issue before the court; in particular, any harm to the Plaintiff. As Plaintiff's counsel clearly explained at the settlement conference on March 14, 2007, their intent is to parade the altered medical records in front of the jury for the sole purpose of enhancing a verdict on so-called "bad facts." These "bad facts" are not of defendants' making and it would be grossly prejudicial for the jury to punish Defendants for bad acts attributable to a third person over whom defendants had absolutely no control. Moreover, the jury would punish defendants for "bad acts'" which did not cause or contribute to cause any harm to Plaintiff.

The appropriate sanction, therefore, is to prevent Plaintiff from utilizing, referring to, or introducing as evidence the Inglehart altered medical records. This will not harm Plaintiff, because Defendant has already informed the court that it is agreed that the one-month delay in receiving full and proper medical care did have some impact on plaintiff, the only question being what is the measure of that impact in terms of compensation.

Defendant also seeks the imposition of attorneys fees and costs for the willful and bad faith withholding of evidence by Plaintiff. Fed. R. Civ. P. 37. This includes the fees and costs for bringing and presenting this motion.

///

---

care was not met because an immediate x-ray was indicated yet not ordered by the medical provider. This is what may have caused harm to the Plaintiff, not the existence of altered medical records which have no relevance to the level of harm that may have flowed from the missed diagnosis and failure to order an x-ray. In this instance, the altered medical records have absolutely no purpose other than to inflame the jury by making the jury think that AMSEA was responsible for the "bad acts" of Inglehart when in fact AMSEA had no knowledge of the altered records until May 2006 when they first came to light.

4832-4584-9857.1.053276-00011                -10-

## IV. Conclusion

Based on the above discussion and the applicable law, Inglehart's altered medical records should be stricken entirely and no reference whatsoever to them during trial should be permitted.

DATED: March 19, 2007.

CARLSMITH BALL LLP

_____
DAVID LEDGER
Attorneys for Defendant
American Overseas Marine Corporation

# EXHIBIT

# "A"

| HEALTH RECORD | CHRONOLOGICAL RECO[RD] | |
|---|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) | |

3/25/04
0900

MEDICAL DEPARTMENT
MARITIME PREPOSITIONING SHIPS
SQUADRON THREE   UNIT 25101
FPO AP 96601-7108

S: 394.0. w/m c̄ 2"b" Laceration to ® lateral side of 5th finger ® hand, mild pain. States "handling iron pipes & causing injury." Can have flexation & ROM to finger.

O: w/d/w/m c̄ ∅ KOB, ∅ other problems except lacerated 5th finger ® hand due to injury, ∅ signs of fx or tendon injury to finger; copious bleeding, good blood supply.

A: Laceration 2½" long to capsule of finger 5 fx or tendon injury.

P: Scrubbed c̄ Bet. Scrub and Local 1% Lidocaine, 2cc into laceration c̄ (7) seven 3-0 nylon sutures applied. Tetanus immunization current. Clean sterile dressing applied. Bacitracin oint. To elevate & placed on light duty.

CARL INGLEHART
MEDICAL SERVICE OFFICER

3/26/04
1130hrs.

MEDICAL DEPARTMENT
MARITIME PREPOSITIONING SHIPS
SQUADRON THREE   UNIT 25101
FPO AP 96601-7108

SNM returned for f/u & dressing change. ∅ signs of infection, minimal draining on onset, sutures intact. ∅ pain. Changed dressing and is to keep as clean as possible. Will F/U eval on 3/28/04.

CARL INGLEHART
MEDICAL SERVICE OFFICER

3/28/04

MEDICAL DEPARTMENT
MARITIME PREPOSITIONING SHIPS
SQUADRON THREE   UNIT 25101
FPO AP 96601-7108

Returned for dressing change. ∅ signs of infection, healing well. To keep clean, dry. Will change dressing on 3/30/04

CARL INGLEHART
MEDICAL SERVICE OFFICER   OVER →

PATIENT'S NAME: Couture, Kenneth L.       SEX: M
STATUS: O-med
SPONSOR'S NAME:                ORGANIZATION: Amsea Contract
DEPART/SERVICE: SSN/IDENTIFICATION NO: 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    DATE OF BIRTH: 8/25/55

000078

CHRONOLOGICAL RECORD OF MEDICAL CARE
STANDARD FORM 600



Exh. A

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
|---|---|
| 3-30-04<br>1000 hrs. | MEDICAL DEPARTMENT<br>MARITIME PREPOSITIONING SHIPS<br>SQUADRON THREE  UNIT 25101<br>FPO AP 96601-7108<br><br>SM returned to sickbay for F/U eval of laceration to 5th finger ® hand. Sutures intact, will remove on or about 3rd April 04. Has some residual hematoma from injury but has ROM to finger. Clean, sterile dressing applied c̄ Bacitracin Ointment. Will F/U on Thursday.<br>CARL INGLEHART<br>MEDICAL SERVICE OFFICER |
| 4-1-04<br>1100 hrs | MEDICAL DEPARTMENT<br>MARITIME PREPOSITIONING SHIPS<br>SQUADRON THREE  UNIT 25101<br>FPO AP 96601-7108<br><br>SM returned for F/U of 5th finger ® hand laceration occurring 1 wk ago. Sutures still in place, p̄ signs of edema or infection. Did place clean, sterile dressing c̄ Bacit Oint. c̄ splint. Advised that MSO will remove every other suture on Sat & the last on Sunday 3rd & 4th April to see if tolerated. F.F.F.D.<br>CARL INGLEHART<br>MEDICAL SERVICE OFFICER |
| 4-3-04<br>1000 hrs. | MEDICAL DEPARTMENT<br>MARITIME PREPOSITIONING SHIPS<br>SQUADRON THREE  UNIT 25101<br>FPO AP 96601-7108<br><br>SM returned for suture removal of laceration to 5th finger ® hand. Removed (7) sutures 3-0 nylon, laceration has healed. Will still place splint to area c̄ sterile dressing for 3 days. F.F.F.D.<br>CARL INGLEHART<br>MEDICAL SERVICE OFFICER |
| 4-8-04 | MEDICAL DEPARTMENT<br>MARITIME PREPOSITIONING SHIPS<br>SQUADRON THREE  UNIT 25101<br>FPO AP 96601-7108<br><br>SM returned for F/U of laceration sustained 2 wks ago, to 5th finger ® hand. Laceration has healed but now feels slight twinging pain to area possibly due to nerve impairment. If it radically continues should see neurologist for F/U. As of now SM is fit for full duty.<br>CARL INGLEHART<br>MEDICAL SERVICE OFFICER |

000079

# EXHIBIT

# "B"

| HEALTH RECORD | CHRONOLOGICAL RECORD | |
|---|---|---|
| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) | |

**3/25/04 0900**
MEDICAL DEPARTMENT
MARITIME PREPOSITIONING SHIPS
SQUADRON THREE UNIT 25101
FPO AP 96601-7108

S: 39 y.o. w/m c̄ 2½" laceration to ® lateral side of 5th finger ® hand, mild pain. States "handling trim pipes & causing injury. Can have flexion & ROM to finger.

O: w/o/w/m c̄ ∅ KDA, ∅ other problems except laceration 5th finger ® hand due to injury, ∅ signs of fx or tendon injury to finger. Copious bleeding, good blood supply.

A: Laceration 2½" long to capsule of finger 5 ∅ fx or tendon injury.

P: Scrubbed c̄ Bet. Scrub and local 1% Lidocaine, 2cc into laceration c̄ (7) seven 3-0 nylon sutures applied. Tetanus immunization current. Clean sterile dressing applied. F Bacitracin joint. To elevate & placed on light duty.

CARL INGLEHART
MEDICAL SERVICE OFFICER

**3/26/04 1130hrs**
MEDICAL DEPARTMENT
MARITIME PREPOSITIONING SHIPS
SQUADRON THREE UNIT 25101
FPO AP 96601-7108

SvM returned for F/U c̄ dressing change. ∅ signs of infection, minimal draining on onset, sutures intact. ∅ pain. Changed dressing and is to keep as clean as possible. Will F/U eval on 3/28/04

CARL INGLEHART
MEDICAL SERVICE OFFICER

**3/28/04**
MEDICAL DEPARTMENT
MARITIME PREPOSITIONING SHIPS
SQUADRON THREE UNIT 25101
FPO AP 96601-7108

Returned for dressing change. ∅ signs of infection, healing well. To keep clean & dry. Will change dressing on 3/30/04

CARL INGLEHART
MEDICAL SERVICE OFFICER

OVER →

PATIENT'S IDENTIFICATION
PATIENT'S NAME: Couture, Kenneth L.
SEX: M
STATUS: Q-med
SPONSOR'S NAME:
ORGANIZATION: Ansco Contract
SSN: 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
DATE OF BIRTH: 8/25/55

CHRONOLOGICAL RECORD OF MEDICAL CARE
STANDARD FORM 600

**Exh. B**

| DATE | SYMPTOMS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
|---|---|
| 3-30-04  1000 hrs. | **MEDICAL DEPARTMENT**  **MARITIME PREPOSITIONING SHIPS**  SQUADRON THREE  UNIT 25101  FPO AP 96601-7108  SNM returned to sickbay for F/U eval of laceration to 5th finger (R) hand. Sutures intact, will remove on or about 3rd April 04. Has some residual hematoma from injury but has ROM to finger, clean, sterile dressing applied c Bacitracin Ointment. Will F/U on Thursday. Was advised to have finger x-rayed in Saipan.  — CARL INGLEHART, MEDICAL SERVICE OFFICER |
| 4-1-04  1100 hrs | **MEDICAL DEPARTMENT**  **MARITIME PREPOSITIONING SHIPS**  SQUADRON THREE  UNIT 25101  FPO AP 96601-7108  SNM returned for F/U of 5th finger (R) hand laceration occurring 1 wk ago. Sutures still in place, ∅ signs of edema or infection. Did place clean, sterile dressing c Bacit. Oint. c splint. Advised that MSO will remove every other suture on Sat & the last on Sunday 3rd & 4th April to see if tolerated. FFFD. Asked if he had finger x-rayed?  — CARL INGLEHART, MEDICAL SERVICE OFFICER |
| 4-3-04  1000 hrs. | **MEDICAL DEPARTMENT**  **MARITIME PREPOSITIONING SHIPS**  SQUADRON THREE  UNIT 25101  FPO AP 96601-7108  SNM returned for suture removal of laceration to 5th finger (R) hand. Removed (7) sutures 3-0 nylon, laceration has healed. Will still place splint to area c sterile dressing for 3 days. FFFD. Still has not had finger x-rayed or seen an Orthopedic doctor.  — CARL INGLEHART, MEDICAL SERVICE OFFICER |
| 4-8-04 | **MEDICAL DEPARTMENT**  MARITIME PREPOSITIONING SHIPS  SQUADRON THREE  UNIT 25101  FPO AP 96601-7108  SNM returned for F/U of laceration sustained 2 wks ago to 5th finger (R) hand. Laceration has healed but now feels slight twinge pain to area possibly due to nerve impairment. If it radically continues should see neurologist for F/U. As of now SNM is fit for full duty.  — CARL INGLEHART, MEDICAL SERVICE OFFICER |

STANDARD FORM 600 BACK (Rev. 5-84)

## DECLARATION OF SERVICE

The undersigned hereby declares that on the 19th day of March 2007, I will cause to be served, via electronic filing/service, a true and correct copy of **DEFENDANTS' EX PARTE MOTION *UNDER LOCAL RULE 7.1.H.3(B)* TO SHORTEN TIME TO HEAR *AMENDED* MOTION FOR SANCTIONS; CERTIFICATION PURSUANT TO LOCAL RULE 7.1.H.3(B); MOTION FOR SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES; EXHIBITS A & B; DECLARATION OF SERVICE** upon the following Counsels of record:

> William M. Fitzgerald, Esq.
> Law Office of William M. Fitzgerald
> 1st Floor, Macaranas Building
> Post Office Box 909
> Ph: 670-234-7241
> Facsimile: 670-234-7530
> Saipan, MP 96950

and

> Bruce Berline, Esq.
> Law Office of Bruce Berline
> 1st Floor, Macaranas Building
> Post Office Box 5682 CHRB
> Ph: 670-233-3663
> Facsimile: 670-233-5262
> Garapan, Saipan MP 96950

DATED: March 19, 2007.

_____
DAVID LEDGER